# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WILLIAM LESLIE,                         :

                Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.               :

Case No. 3:08-cv-181

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI in January, 2000, alleging disability from May 28, 1997, due to degenerative disc disease and emphysema. (Tr. 52-54; 227-28; 55-64). Plaintiff's applications were denied initially and on reconsideration. (Tr. 43-46; 48-50; 230-33; 235-38). A hearing was held before Administrative Law Judge Daniel Shell, (Tr. 377-407), who determined that Plaintiff is not disabled. (Tr. 242-53). The Appeals Council granted Plaintiff's request for review and remanded the matter for additional proceedings. (Tr. 271-74).

On remand, Judge Shell held another hearing, (Tr. 408-40), following which he again found that Plaintiff is not disabled. (Tr. 17-35). The Appeals Council denied Plaintiff's request for review, (Tr. 9-14), and Judge Shell's decision became the Commissioner's final decision.

Plaintiff filed an action in this Court seeking judicial review of the Commissioner's decision. *Leslie v. Commissioner,* No. 3:06-cv-092, (S.D. Ohio, filed Mar. 31, 2006; Doc. 2)("*Leslie I*"). After briefing by the parties, the undersigned issued a Report and Recommendations in which I concluded that the Commissioner had erred by failing to find that Plaintiff has a severe mental impairment and recommending that the matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings. *Leslie I,* 3:06-cv-092 (Doc. 8); *see also,* Tr. 547-59. District Judge Thomas Rose adopted that Report and the matter was remanded to the Commissioner. *Leslie I,* 3:06-cv-092 (Doc. 11); *see also,* Tr. 543-46.

On remand, Administrative Law Judge James Knapp held a hearing, (Tr. 473-515), following which he found that Plaintiff is not disabled. (Tr. 449-68). The Appeals Council denied Plaintiff's request for review, (Tr. 441-43), and Judge Knapp's decision became the Commissioner's

4

final decision. This action followed.

In determining that Plaintiff is not disabled, Judge Knapp found that Plaintiff met the insured status requirements of the Act through December 31, 2000. (Tr. 456, ¶ 1). Judge Knapp then found that Plaintiff has severe lumbar degenerative disc disease, borderline intellectual functioning, dysthymia, and generalized anxiety disorder, but that he does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, ¶ 3; Tr. 463, ¶ 4. Judge Knapp also found that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.,* ¶ 5. Judge Knapp then used section 202.18 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and determined that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.,* ¶¶ 9, 10. Judge Knapp concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 468).

In my November 2, 2006, Report in *Leslie I*, I reviewed and summarized the medical evidence that was a part of the administrative record at that time. *Leslie I*, Doc. 8 at 4-10; *see also,* Tr. 550-56. That review and summary is incorporated herein by reference. Accordingly, the following review and summary is of the evidence that has become a part of the record since the Court's March, 2007, remand.

A June 4, 2004, MRI of Plaintiff's lumbar spine revealed degenerative diskovertebral changes at L5-S1 with diffuse annulus bulging and bilateral foraminal stenosis. (Tr. 588).

Consulting neurosurgeon Dr. Minella reported on September 3, 2004, that he first saw Plaintiff on March 14, 2003, for a second opinion after treating physician Dr. West recommended to Plaintiff that he undergo a lumbar fusion. (Tr. 586). Dr. Minella reported further that at that time, he also recommended a spinal fusion. *Id.* Dr. Minella noted that he next saw

5

Plaintiff on August 4, 2004, at which time Plaintiff stated he was reluctant to have the surgery because, even though it had been approved by Worker's Compensation, he had no money to live on and needed some type of an income in order to maintain his existence, that he continued to complain of back pain, leg pain, and paresthesias, and that he was unemployable and disabled. *Id.*

Treating physician Dr. Bennett reported on September 5, 2003, that Plaintiff's diagnoses were foraminal stenosis L5-S1 bilaterally, lumbar strain, severe degenerative disc disease, and moderate lumbar bulging disc, that he was able to alternate standing and walking for one hour in an eight hour day, sit for one hour in an eight hour day with alternating positions, was unable to lift, stand/walk or sit for any length of time, stoop, or bend, was unable to perform either light or sedentary work, and that he was permanently disabled. (Tr. 589-93).

On December 23, 2005, Dr. Bennett reported that she saw Plaintiff every three months for medication refills and follow-up treatment, that he still suffered with chronic back pain, and that he was being followed by Dr. Minella who felt Plaintiff was disabled from his back condition and unable to work. (Tr. 587).

The transcript contains a copy of Plaintiff's high school record which reveals that Plaintiff was born on March 31, 1962, that he did not graduate from high school but withdrew in November, 1979, and that in the 10th grade, he required special education classes in math, history, and English, and that he performed math at the 7.4 grade level and English/reading at the 7.9 grade level. (Tr. 321-15). The record now contains additional school records which reveal that on the California Test of Mental Maturity, Plaintiff's scores ranged from 79 to 89 in the second grade, 72 to 75 in the fourth grade, and 79 to 80 in the sixth grade. (Tr. 577-85).

The medical advisor (MA) testified via telephone at the hearing that Plaintiff's school

records indicate that Plaintiff had a below average IQ, that he was functioning at the low average intellectual level, and that the totality of the evidence, including the type of work Plaintiff has done, indicates borderline intellectual functioning, (Tr. 494-508). The MA also testified that Plaintiff would be limited to simple repetitive tasks, he could understand short simple instructions, maintain attention for about two hours to perform a variety of tasks, and that he should not have close contact with co-workers and supervisors and minimal interaction with others. *Id.* The MA testified further that Plaintiff's school records indicate that his testing results showed that his performance age was at a level lower than his chronological age. *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to find that he satisfied Listing 12.05C and by finding that he is able to perform a limited range of light work. (Doc. 9).

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

Listing 12.05 reads in part:

*Mental Retardation and Autism:* Mental retardation refers to a significantly sub average general intellectual functioning with deficits

> in adaptive behavior initially manifested during the developmental period (before age 22)....
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
> ...

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05.

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria...." *Foster v. Halter,* 279 F.3d 348 (6th Cir. 2001) (citations omitted)(emphasis in original).

As I noted in my Report in *Leslie I,* examining psychologist Dr. Bonds reported on February 14, 2003, that Plaintiff's verbal IQ was 65, his performance IQ was 65, and his full scale IQ was 62 putting him in the extremely low range of intellectual functioning. (Tr. 332-41).In addition, Dr. Bonds opined that Plaintiff's diagnoses were panic disorder with agoraphobia, major depressive disorder, cannabis abuse, and mild mental retardation. *Id.* Those are the only IQ scores in the record which fall within the requirements of Listing 12.05C and Dr. Bonds is the only mental health expert who has suggested that Plaintiff is mentally retarded. However, as noted, when Dr. Bonds reported the numerical values of Plaintiff's IQ scores, she noted that the scores put Plaintiff "in the extremely low range of intellectual functioning". In listing Plaintiff's diagnoses, Dr. Bonds included a diagnosis of "mild mental retardation." It is arguable, then, that Dr. Bonds opinion as to Plaintiff's intellectual functioning is internally inconsistent which would provide the Commissioner with an adequate basis to reject Dr. Bonds' opinion as to Plaintiff's diagnosis of, *inter*

*alia,* mild mental retardation.

In contrast to Dr. Bonds' opinion, examining psychologist Dr. Jones reported that Plaintiff's full scale IQ was 69, his verbal IQ was 70, and his performance IQ was 74. (Tr. 147-70). While recognizing that Plaintiff's full scale IQ placed him in the mildly mentally retarded range of intellectual functioning, Dr. Jones noted that Plaintiff's other skills indicated that he was functioning at a higher level and she therefore opined that Plaintiff's diagnoses included borderline intellectual functioning. *Id.*; Tr. 145. Further, as noted above, the MA concluded that Plaintiff is mentally retarded.

Nevertheless, even assuming that Dr. Bond's opinion as to Plaintiff's diagnosis of mild mental retardation is entitled to great weight, there is no evidence in the record of deficits in adaptive behavior initially manifested during the developmental period, that is, before age 22. In fact, Plaintiff's school records indicate that Plaintiff attended regular classes until at least the tenth grade. In addition, assuming that the testing scores in Plaintiff's school records are not to be considered because it is not clear as to the type of instrument used, there is no indication of IQ scores which fall within the mentally retarded range. Finally, the VE testified at the hearing that Plaintiff's past relevant work included, *inter alia*, semiskilled work with a SVP (Specific Vocational Preparation) of 6. (Tr. 510).[1] An SVP of 6 is at the higher end of semiskilled work. *See, e.g.,* Social Security Ruling (SSR) 00-4P (Dec. 4, 2000), 2000 WL 1898704.

---

[1] As Plaintiff points out, the VE at a prior hearing testified that Plaintiff's past relevant work as metal fabricating shop helper, truck driver helper, and general laborer were all unskilled. (Tr. 433). However, the VE who testified at the hearing on the Court-ordered remand which is the hearing related to the Commissioner's decision currently at issue testified that Plaintiff's past relevant work was as fabricating machine operator and punch press operator which are semiskilled. (Tr. 510). The VE's testimony that Plaintiff's past relevant work included fabricating machine operator and punch press operator is consistent with Plaintiff's own report on his Work History Report. (Tr. 73-74).

Under these facts, the Commissioner did not err by finding that Plaintiff does not satisfy Listing 12.05C.

Plaintiff argues next that the Commissioner erred by finding that he is able to perform a limited range of light work. Specifically, Plaintiff's position is that the Commissioner erred by failing to give the proper evidentiary weight to Dr. Bennett's opinion.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only

appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Judge Knapp rejected Dr. Bennett's opinion that Plaintiff is disabled on the bases that it is not supported by clinical findings or the objective test results and is inconsistent with other evidence of record. (Tr. 465-66).

As I noted in *Leslie I*, Plaintiff has received treatment from Dr. Bennett for his low back impairment since at least 1997. (Tr. 171-226; 321-25; 356-70; 587; 589-93). A review of Dr. Bennett's office notes reveals that the only objective clinical finding she reported are tenderness and limitation in his lumbar spine motions. Indeed, Dr. Bennett's office notes are primarily recitations of Plaintiff's subjective complaints, suggest that Dr. Bennett infrequently performed physical examinations of Plaintiff, and indicate that she simply prescribed medications based on Plaintiff's subjective complaints.

In contrast, consulting neurosurgeon Dr. West reported that Plaintiff had, at worst, tenderness of the lower lumbar region and decreased range of lumbar spine motion. (Tr. 110-11). In addition, Dr. West noted that Plaintiff had good muscle function, no sensory deficits, and negative straight leg raising. *Id.* Similarly, examining physician Dr. Wunder reported that Plaintiff

ambulated normally, was able to stand on his toes and heels, had no muscle spasms, voluntarily restricted his range of motion due to complaints of pain but that it did not correlate with straight leg raise, had normal motor testing, reflexes, and sensation, negative straight leg raising, and no evidence of atrophy. (Tr. 342-46). Likewise, examining physician Dr. Danopulos reported that Plaintiff had a normal gait, that his lumbar spine was, at worst, painful to pressure, his paraspinal muscles were soft and painless, he was able to squat and arise from a squat and toe and heel walk, and that he exhibited no atrophy, had normal motor strength, had a normal sensory examination, and that his reflexes were 2+ and equal bilaterally. (Tr. 114-22). Finally, Dr. Bennett's opinion is inconsistent with the reviewing physicians' opinions. *See,* Tr. 123-31. Under tehse facts, the Commissioner did not err by rejecting Dr. Bennett's opinion.

Plaintiff also argues that the Commissioner erred by rejecting Dr. Minella's opinion. However, for the same reasons that the Commissioner properly rejected Dr. Bennett's opinion, he had an adequate basis for rejecting Dr. Minella's opinion.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not

disabled and therefore not entitled to benefits under the Act be affirmed.

April 20, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).